UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAWN ARCHIE,<br><br>        Plaintiff,<br><br>   v.<br><br>RICHARD T. SMITH, et al.,<br><br>        Defendants. | No. 20-cv-7649 (NLH) (KMW)<br><br><br>OPINION |

APPEARANCE:

Shawn Archie
974313
Southern State Correctional Facility
4295 Route 47
Delmont, NJ 08314

    Plaintiff Pro se

HILLMAN, District Judge

    Plaintiff Shawn Archie seeks to bring a complaint pursuant to 42 U.S.C. § 1983 against Warden Richard T. Smith, Dr. Alan Dias, Judy Hirta, Victor Bermudez, Kristina Smith, Carl Jackson, Officer Mennardio, and Sergio Marquez.  See ECF No. 1.

    At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the complaint shall be

1

dismissed without prejudice. Plaintiff's motion for the appointment of counsel is denied.

I.  BACKGROUND

On March 17, 2020, Plaintiff, who was at that time a pretrial detainee at the Cumberland County Jail, left the facility to get an MRI of a shoulder injury that occurred on October 9, 2019. ECF No. 1 at 8-9. Plaintiff alleges he was exposed to an officer who later tested positive for the novel coronavirus COVID-19 during this trip. Id. at 8. Due to his exposure, Plaintiff was quarantined on March 23, 2020. Id. While escorting Plaintiff to quarantine, Officers Jackson and Mennardio allegedly announced to everyone that Plaintiff had COVID-19. Id. at 1, 9. Kristina Smith and Sergio Marquez also allegedly told others Petitioner was positive for COVID-19. Id. at 5. Plaintiff alleges Dr. Dias refused to test him for COVID-19.

Plaintiff seeks damages for defamation and violation of his medical privacy. He also requests an order requiring the jail to test him for COVID-19. He asks for the appointment of pro bono counsel.

II.  STANDARD OF REVIEW

Section 1915(e)(2) requires a court to review complaints prior to service in cases in which a plaintiff is proceeding in forma pauperis. The Court must sua sponte dismiss any claim

2

that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding in forma pauperis and is incarcerated.

To survive sua sponte screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

III. DISCUSSION

Plaintiff argues defendants defamed him and violated his medical privacy by spreading false news that he tested positive for COVID-19.  "An individual has a constitutional right to privacy which protects 'the individual interest in avoiding

3

disclosure of personal matters.'  We have long recognized the right to privacy in one's medical information . . . ." Doe v. Delie, 257 F.3d 309, 315 (3d Cir. 2001) (quoting Whalen v. Roe, 429 U.S. 589, 599 (1977)).  "[A] prisoner's right to privacy in this medical information is not fundamentally inconsistent with incarceration." Id. at 317.

That being said, "a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen. . . . [Plaintiff's] constitutional right is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." Id.  "[A]n inmate's constitutional right may be curtailed by a policy or regulation that is shown to be reasonably related to legitimate penological interests." Id. (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

The Third Circuit has yet to define the parameters of a prisoner's right to privacy in his medical information. See Smith v. Hayman, 489 F. App'x 544, 549 (3d Cir. 2012) ("[Delie] did not establish any such rule with 'obvious clarity.'"). Courts construing prisoner's medical privacy claims have framed the right narrowly and have applied it to situations involving "an unusual medical condition which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or

4

even potential violence and harm, particularly when word of the condition is likely to spread through 'humor or gossip[.]'" Smith v. Hayman, No. 09-2602, 2012 WL 1079634, at *18 (D.N.J. Mar. 30, 2012) (quoting Powell v. Shriver, 175 F.3d 107, 112–13 (2d Cir. 1999)), aff'd, Smith, 489 F. App'x 544 (alteration in original). Most cases concern revealing an inmate's HIV-positive status or that they are transgender. See, e.g., Doe, 257 F.3d 309 (HIV-positive); Powell, 175 F.3d 107 (transgender identity); Smith, 2012 WL 1079634 (transgender identity). Cf. Vines v. Columbus House et al., No. 13-3923, 2017 WL 2539409, at *14 (D.N.J. June 12, 2017) (holding plaintiff did not state claim for disclosure of asthma, back problems, high blood pressure, and allergies to mold, dust, spray chemicals, and smoke).

    Plaintiff's alleges he was falsely identified as having COVID-19. COVID-19 is rampant in prisons and in general society. "[] COVID-19 poses risks confronting not only prisoners but law-abiding citizens nationwide, including front-line workers and vulnerable nursing home patients." Wragg v. Ortiz, 462 F. Supp. 3d 476, 502 (D.N.J. 2020). Numerous public figures have been diagnosed with COVID-19, including the President of the United States. For purposes of a Fourteenth Amendment claim alleging a violation of medical privacy, COVID-

5

19 is not an "unusual medical condition" that would likely expose a person to ridicule or discrimination.

Moreover, disclosure of COVID-19 status serves a legitimate penological interest in protecting the health and safety of prison staff and inmates alike.  Jails and prisons have been particularly impacted by the highly contagious disease, and prison officials need to know who has been exposed in order to do contact tracing and take steps to prevent further spread.  Plaintiff states he was exposed on March 15 to an officer who tested positive on or about March 23.  In order to do effective contact tracing, the jail needed to know everyone Plaintiff came into contact with during that 8-day period as well as everyone with whom those people came into contact.  Therefore, the fact that Smith and Marquez also allegedly told people outside of Plaintiff's unit that he had tested positive is not necessarily unreasonable.

"We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.  The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."  Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (internal citations omitted).  Plaintiff has not

6

shown that defendants' actions, at a minimum, did not have a valid, rational connection to a legitimate penological interest under Turner.¹  Vines, 2017 WL 2539409, at *14 ("[Defendants] may have acted unprofessionally, [but] their conduct does not rise to the level of a constitutional violation actionable under § 1983.").

Since Plaintiff has failed to state a medical privacy claim, he has also failed to state a claim against Warden Smith under a supervisory theory of liability.²  Plaintiff vaguely alleges that Ms. Hirata "gave False certification and information.  As to how many officers as well as inmates that tested positive for the virus."  ECF No. 1 at 6.  This cursory statement is not enough to state any constitutional claim against her.

---

¹ The Court considers four factors in assessing the overall reasonableness of a prison regulation: (1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are alternatives to the regulation that "fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests." Turner v. Safley, 482 U.S. 78, 89-91 (1987).

² Plaintiff also cites the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  "There is no federal private right of action under HIPPA."  Baum v. Keystone Mercy Health Plan, 826 F. Supp. 2d 718, 721 (E.D. Pa. 2011).

7

Petitioner has also failed to state a claim for denial of medical care under the Fourteenth Amendment.[3]  "[T]he Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' without deciding whether the Fourteenth Amendment provides greater protections."  Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (quoting City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983)).  The Court will therefore review Plaintiff's claims under the same standard used to evaluate similar claims brought under the Eighth Amendment.  Moore v. Luffey, 767 F. App'x 335, 340 (3d Cir. 2019).

To state an Eighth Amendment Claim, a plaintiff must allege facts indicating that defendants were deliberately indifferent to his or her serious medical need.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To accomplish this, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'"  Pearson v. Prison Health Serv., 850 F.3d 526, 534

---

[3] Plaintiff's denial of medical care claim is analyzed under the Fourteenth Amendment as he was a pretrial detainee at the time of the alleged violation.

8

(3d Cir. 2017) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (second alteration in original)).  The Third Circuit has found deliberate indifference "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'"  Parkell v. Danberg, 833 F.3d 313, 337 (3d Cir. 2016) (quoting Rouse, 182 F.3d at 197).

The only allegation in the complaint is that Dr. Dias was deliberately indifferent to Plaintiff's medical needs by not giving Plaintiff a COVID-19 test even though Plaintiff offered to pay for it; Plaintiff does not allege that he displayed symptoms that were not treated or any other facts indicative of deliberate indifference.  Plaintiff has not sufficiently alleged a COVID-19 test was medically necessary and that that Dr. Dias acted with the required state of mind when he declined to give Plaintiff a test.[4]

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act] should receive leave to amend unless amendment would be inequitable or futile."  Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d

---

[4] Plaintiff's defamation claim against defendants suggests to the Court that Plaintiff is asserting he did not have COVID-19.

9

Cir. 2002). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). As Plaintiff may be able to allege facts that would state a federal claim, the Court grants Plaintiff leave to amend.

Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, Federal Practice and Procedure 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.

The Court declines to exercise supplemental jurisdiction over any state law claims as it is dismissing the federal claims. 28 U.S.C. § 1367(c). The Court also denies Plaintiff's motion for counsel, ECF No. 12, as it is dismissing the complaint. Plaintiff may replead his state tort claims and request the appointment of counsel again in the event he elects to file an amended complaint.

10

IV.  CONCLUSION

For the reasons stated above, the complaint will be dismissed without prejudice.  28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff may move to amend his complaint within 30 days of this Opinion and Order.  Plaintiff's motion for the appointment of counsel will be denied.

An appropriate order follows.


Dated: November 25, 2020            ___s/ Noel L. Hillman_____
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.